AMERICAN TWIST DRILL COMPANY, A MICHIGAN CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12514.   Promulgated August 23, 1948.

*Clarence A. Bradford, Esq.*, for the petitioner.
*Philip J. Wolf, Esq.*, for the respondent.

**OPINION.**

HILL, *Judge*: The ultimate question for decision is whether petitioner filed application for the certificate prerequisite to an amortization deduction for the seven drill milling machines involved within the period of limitations provided by section 124 (f) (3) of the Internal Revenue Code. The answer to that queston hinges upon the interpretation and construction of the material part of such section, which reads as follows:

SEC. 124. AMORTIZATION DEDUCTION.

\* \* \* \* \* \* \*

(3) The certificate provided for in paragraph (1)[1] shall have no effect unless an application therefor is filed before the expiration of six months after the beginning of such construction, reconstruction, erection. or installation or the date of such acquisition, or before December 1, 1941, whichever is later \* \* \*.

We believe petitioner failed to file its application for the necessity certificate within the period of limitation provided by the above quoted section.

Petitioner contends that "by the use of commas, the Congress intended to allow the six months to begin with the construction, OR erection, OR, installation, 'whichever is later'." Expressing its argument in another way, petitioner urged that a "reasonable interpreta-

---

[1] (1) There shall be included only so much of the amount otherwise constituting such adjusted basis as is properly attributable to such construction, reconstruction, erection, installation, or acquisition after December 31, 1939, as either the Secretary of War or the Secretary of the Navy has certified as necessary in the interest of national defense during the emergency period, which certificate shall be under such regulations as may be prescribed from time to time by the Secretary of War and the Secretary of the Navy, with the approval of the President.

tion" of the section involved is "to hold that the six months period applied to 'Whichever is later', the construction, erection or acquisition of the emergency facility."

The fallacy of petitioner's argument is in its failure to consider all of the words of the pertinent part of section 124 (f) (3). It is clear from both the wording of that section and the conference reports pertinent thereto that Congress meant that application for the necessity certificate must be filed before the expiration of six months after the beginning of either construction, reconstruction, erection, or installation. The Senate Finance Committee report (S. Rept. No. 688, 77th Cong., 1st sess., p. 2) which accompanied a bill amending the section here involved, reads in part as follows:

Section 2 of the joint resolution proposes to change from 60 days to 6 months as the time, after the beginning of construction, installation, or acquisition of the emergency facilities, within which applications for necessity certificates must be filed. Experience has shown that in many cases it is impossible for the applicant to identify the facilities sought to be certified with any degree of accuracy within the time now prescribed. This is due to the fact that expanding emergency facilities under present conditions require the constant change of items due to the difficulty in securing some, and the changing requirements of the Government as to others. Accordingly, under the present law it is necessary for many applicants to file numerous supplemental and new applications with additional appendixes, describing items of facilities in the process of construction. This occasions a great amount of time and effort on the part of Government officials. The experience of the certifying units justifies the belief that these difficulties will be obviated by extending the period for filing to 6 months after the beginning of the construction without prejudice to the interest of the Government. * * *

See also H. Rept. No. 1207, 77th Cong., 1st sess., p. 2.

We believe the above quoted portion of the report resolves all doubt that Congress meant the phrase "the beginning of" to apply to the words "construction, reconstruction, erection, or installation." This is clearly proved by the committee's concern with the many cases where it was impossible for the applicants to identify within 60 days after the beginning of construction facilities for which they requested necessity certificates. Moreover, the phrase "whichever is later" does not refer to the relative beginning time as between "construction, reconstruction, erection, or installation" of the emergency facilities, as contended by petitioner.

In the above quoted language of subparagraph (3) of section 124 (f) the words "beginning of" apply to each of the following named operations: construction, reconstruction, erection, and installation. They do not apply to acquisition.

In the instant case petitioner did not acquire the drill milling machines involved. It only acquired the constituent materials with which

it constructed or erected such machines. Hence, we have no question here as to the "date of  \*  \*  \*  acquisition."

In its ordinary sense, "installation" relates to the setting up or placing in position of completed machines. There was no such installation here. If the word "installation" used in the quoted statute may be appropriately used in the operation by which petitioner constructed completed machines, it would be so used in a sense synonymous with the construction of such machines. In other words, the only installation operation in respect of such machines consisted of setting up or placing in position the various parts of the machines which were required in the construction of the machines. There was in the instant case no installation distinct from the operation of construction. In this sense of the word "installation," the beginning thereof in the instant case was synchronous with the beginning of construction.

Since there was no acquisition of the machines involved within the meaning of the applicable section, it is obvious from the wording of the section itself, as applied to the facts here, that Congress provided that the application must be filed within six months from the beginning of construction of the machines or before December 1, 1941, whichever is later. See S. Rept. No. 688, *supra.*

Petitioner did not file application for a necessity certificate for the milling machines prior to December 1, 1941. It is thus apparent that, before we can find the certificate involved had any effect for the purpose of entitling petitioner to an amortization deduction, application therefor must have been filed before the expiration of six months after the beginning of construction. The certificate was applied for January 30, 1942. To comply with the requirements of the statute, therefore, petitioner must prove that the beginning of such construction was on or after July 30, 1941.

The facts clearly show that there was a beginning of construction prior to that date. Switches for the machines were received as early as February 19, 1941. We have found as a fact that there was a beginning of construction of the machines on April 29, 1941, when the heavy frames were delivered to petitioner and when, according to its shop superintendent, there was an "assembling of these various items of equipment."

From the above it is clear that petitioner failed to comply with the mandatory requirement of section 124 (f) (3). The certificate issued to petitioner by the Secretary of War on March 5, 1942, therefore, had no effect so far as entitling it to an amortization deduction on the seven drill milling machines for the year involved. It follows that respondent did not err in his determination.

*Decision will be entered for the respondent.*